USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar. 25, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

ACR SYSTEMS, INC.,                    :
                                      :
                    Plaintiff,        :
                                      :        No. 14 Civ. 2817 (JFK)
        -against-                     :
                                      :        **OPINION & ORDER**
WOORI BANK,                           :
                                      :
                    Defendant.        :
-----------------------------------X

APPEARANCES

    For Plaintiff ACR Systems, Inc.:
        JOHN E. CONE JR.

    For Defendant Woori Bank:
        LOVE LAW FIRM P.C.
        By:  Gregory P. Love

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant Woori Bank's motion to
dismiss Plaintiff ACR Systems Inc.'s ("ACR Systems") complaint
for lack of standing under Fed. R. Civ. P. 12(b)(1) and failure
to state a claim under Fed. R. Civ. P. 12(b)(6).  For the
reasons that follow, Woori Bank's motion is denied in part and
granted in part.

### I. Background

### A. Facts

    Unless otherwise noted, the following facts are drawn from
the complaint.[1]  ACR Systems is a corporation with a principal

---

[1] The complaint is part of Exhibit A to the notice of removal.

place of business in Texas.  It sells and ships military defense goods.  It conducts business in Westchester County, New York through its affiliate Costal Mechanics Co. Inc.  Woori Bank is a citizen of South Korea and maintains a branch in New York.[2]

On December 28, 2010, Woori Bank issued a letter of credit on behalf of Woong Kook Co. Ltd. ("Woong Kook"), a South Korean company, to be paid to ACR Systems upon shipment of certain military defense goods as specified in a contract between ACR Systems and Woong Kook.  Although Plaintiff does not have complete copy of the letter of credit, it attaches what it describes as "[a] copy of the advice of the said irrevocable Letter of Credit" as Exhibit A to its complaint. (Compl. ¶ 5.) While it is unclear to the Court what exactly the document is, it appears to indicate that a letter of credit has issued or will soon issue.  The exhibit lists Woong Kook as the applicant, ACR Systems, Inc.[3] as the beneficiary, and Woori Bank, New York as the "Drawee."  Exhibit A also indicates that the "Applicable Rules" for the letter of credit would be the latest version of the International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits, also known as UCP 600.

---

[2] The complaint claims that Woori Bank's principal place of business is New York.  However, the notice of removal clarifies that Woori Bank is a South Korean company with a principal place of business in Seoul.  See also Woori Bank v. Merrill Lynch, 923 F. Supp. 2d 491, 494–95 (S.D.N.Y. 2013).  Either way, the parties are diverse for the purposes of 28 U.S.C. § 1332.
[3] It appears that there is a typo listing "ARC Systems Inc."

Additionally, the document attached as Exhibit A has a "Description of Goods and/or Services" as well as "Documents Required" and "Additional Conditions."

In January 2011, ACR Systems entered into a contract with Woong Kook to supply the South Korean Defense Acquisition Program Administration with military defense goods that were authorized by the U.S. Government for a purchase price of $85,862.00.  Although Plaintiff does not provide them, Purchase Order Sheets dated January 10, 2011 and January 11, 2011 allegedly referenced the letter of credit as the method of payment.

In February 2012, the military defense goods were shipped to Korea where they were accepted by Woong Kook.  ACR Systems avers that it timely complied with the letter of credit's "terms, preconditions and requirements." (Compl. ¶ 9.)  Despite the alleged compliance, Woori Bank only paid ACR Systems $28,099.11, leaving $57,762.89 unpaid.  ACR Systems also alleges that Woori Bank never gave ACR Systems a complete copy of the letter of credit despite repeated requests.

ACR Systems also alleges that it incurred additional expenses because of Woori Bank's failure to pay the balance and ACR System's subsequent efforts to negotiate full payment. These include $4,500 in travel expenses to South Korea; $5,500 in legal fees; $4,200 in storage costs for the military defense

goods; and $57,762.89 for Woori Bank's failure to return the military defense goods.

## B. Procedural History

Plaintiff originally brought this action in the Westchester County Supreme Court of New York.  Defendant removed the action, on the basis of diversity, to the White Plains courthouse of the Southern District of New York.  The case was assigned to Judge Vincent L. Briccetti.  Judge Briccetti reassigned this case to the Manhattan courthouse of the Southern District of New York after it became clear that neither party resided in any of the Northern Counties and the claims did not arise out of activity in the Northern Counties. See ECF No. 19; see also Rule 18(a) of the SDNY Rules for the Division of Business Among District Judges.

Before the case was transferred, Woori Bank had moved to dismiss the complaint but later withdraw a portion of its motion that related to Plaintiff's identity.  At the same time the case was transferred, Defendant's entire motion was denied without prejudice because it was unclear what arguments remained after withdrawal of the identity argument.  Judge Briccetti also extended Defendant's time to respond to the complaint so that Defendant would have an opportunity to refile its motion to dismiss and clarify what arguments it was advancing. See ECF No.

19.  Defendant then filed the motion to dismiss that is now before this Court.

## II. Discussion

Where, as here, a party challenges the sufficiency of the complaint for failure to state a claim under Rule 12(b)(6) and lack of standing under Rule 12(b)(1), the Court evaluates the complaint using the familiar 12(b)(6) standard. See Donoghue v. Bulldog Investors Gen. P'ship, 696 F.3d 170, 173 (2d Cir. 2012) Thus, the Court construes the complaint in the plaintiff's favor and accepts as true the complaint's material factual allegations. See id.  Because standing goes to a court's subject matter jurisdiction, courts ordinarily address standing before addressing the sufficiency of plaintiff's claims. See Teras Int'l Corp. v. Gimbel, No. 13 Civ. 6788, 2014 WL 7177972, at *5 (S.D.N.Y. Dec. 17, 2014).

### A. Standing

### 1. Legal Standard

The burden of demonstrating standing rests on the party that invokes federal jurisdiction. See Hedges v. Obama, 724 F.3d 170, 188 (2d Cir. 2013).  In order to establish Article III standing, the plaintiff must have

> (1) . . . suffered an "injury in fact" that is
> (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical; (2) the
> injury [must be] fairly traceable to the challenged
> action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will
be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
528 U.S. 167, 180-81 (2000); see also Lujan v. Defenders of
Wildlife, 504 U.S 555, 560-62 (1992) (referring to these
requirements as "injury in fact," causation, and
redressability).

## 2. Analysis

Although perhaps counterintuitive, since it was Defendant,
not Plaintiff, who sought the jurisdiction of the federal courts
by removing the action from state court, it is Defendant who
must establish Article III standing. Cf. United States v.
$557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 79 n.9
(2d Cir. 2002) ("[I]t might very well be argued that, at least
as far as Article III — as opposed to statutory — standing goes,
the claimant bears no burden at all, as it is really the
government which is invoking the power of the federal courts to
effect the forfeiture.")  While some of Defendant's allegations
could be construed as raising concerns that go beyond a federal
court's Article III standing, Defendant specifically invokes
cases concerning Article III. (Def. Mem. 14 (citing
DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006); Lujan v.
Defenders of Wildlife, 504 U.S. 555 (1992).)

Assuming Defendant is right about the lack of federal standing, it is doubtful that outright dismissal on that ground would be appropriate, since the Court could simply remand the case back to state court. See LaPierre ex rel. Town of Yorktown v. DiBartolo, No. 12 Civ. 1996, 2013 WL 656313, at *4 (S.D.N.Y. Feb. 21, 2013) (concluding that Plaintiff lacked Article III standing and remanding the case back to state court). Plaintiff did not independently seek remand, but the Court must satisfy itself that it has subject matter jurisdiction before proceeding. See Santos-Buch v. Fin. Indus. Regulatory Auth., Inc., 32 F. Supp. 3d 475, 481 (S.D.N.Y. 2014) ("Courts also have an independent obligation to establish the existence of subject-matter jurisdiction." (internal quotation marks omitted)).

The Court is satisfied that it has subject matter jurisdiction over this case. The parties are diverse and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332. Moreover, Plaintiff has pled sufficient facts to demonstrate standing at this stage of the litigation. See Amidax Trading Grp. V. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (noting that, in order for the complaint to survive at the motion-to-dismiss stage, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue.").

Defendant's standing argument challenges the "injury in fact," causation, and redressability requirements under Lujan.

Defendant claims that Plaintiff suffered no "actual" injury that
is "fairly traceable" to Defendant's actions and that, in any
event, the relief Plaintiff seeks would not redress its alleged
injuries.  To see why Defendant's argument fails, it helps to
take a step back and examine Plaintiff's claims.

The complaint will not win any awards for clarity.[4]  It
asserts three unidentified causes of action that appear to seek
three sets of damages for the same injury.  Indeed, that is how
Defendant characterizes the complaint in its motion to dismiss
when it describes three "buckets" of damages. (Def. Mem. 4.)
Plaintiff does not contest that portrayal and does nothing to
clarify what exactly the other two causes of action would be.
The Court will not guess at what causes of action Plaintiff
might have meant to assert.  Rather, the Court will construe the
complaint as one cause of action with three demands for damages.
Here, it appears clear that Plaintiff's first cause of action is
a claim against Woori Bank for wrongful dishonor of the letter
of credit.  The Court construes what Plaintiff calls its second
and third causes of action as requests for damages flowing from
the wrongful dishonor.

---

[4] In its opposition papers, Plaintiff sought legal fees for having to
defend what it characterizes as a frivolous motion.  The Court will
not address this application since Plaintiff advanced no argument for
why the motion should be deemed frivolous.  Moreover, the Court would
be disinclined to grant such a motion given the complaint's general
lack of clarity.

A letter of credit is typically issued as one part of three separate contractual relationships. See 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 741 (2d Cir. 1999).  Streamlining the relations a little for simplicity, there is first the underlying contract between a buyer and seller. See Am. Express Bank Ltd. v. Banco Espanol de Credito, 597 F. Supp. 2d 394, 401 (S.D.N.Y. 2009).  Here, there is the alleged contract between Woong Kook (the buyer) and ACR Systems (the seller) for the delivery of military defense goods.  Second, there is an agreement between the buyer and the issuer of the letter of credit whereby the issuer agrees to pay the buyer's obligation to the seller (i.e., the credit's beneficiary). See id.  It is not clear that Woong Kook entered into such an agreement. Finally, there is the issuer's promise to pay the seller, provided that the seller's demand for payment conforms to the terms of the letter of credit, which usually means that the seller is required to timely present certain specified documents.  See 3Com Corp., 171 F.3d at 741; ACE Am. Ins. Co. v. Bank of the Ozarks, No. 11 Civ. 3146, 2014 WL 4953566, at *6-7 (S.D.N.Y. Sept. 30, 2014).  Plaintiff's cause of action for wrongful dishonor concerns this third type of relationship.

The first cause of action is relatively straightforward. The "actual" injury Plaintiff alleges is that it was not paid the money owed to it under the letter of credit.  This injury is

"fairly traceable" to Defendant, because ACR Systems alleges that Woori Bank is the issuer that deprived Plaintiff of the money it was owed.  In terms of redressability, payment of the balance owed would obviously go toward remedying the harm to Plaintiff.  As such, Plaintiff has standing to bring its claim, the Court has subject matter jurisdiction, and this action may proceed.  Plaintiff's demands for additional damages will be addressed further when the Court evaluates the sufficiency of Plaintiff's claims.

Before moving on, however, the Court will acknowledge Woori Bank's objection to Plaintiff's second set of damages. Plaintiff seeks damages for "frustrations" that arose with other contracts between ACR Systems and Woong Kook because of Woori Bank's failure to honor the letter of credit.  The "frustrations" allegedly led to the cancellation of four contracts as well as travel fees, legal fees, and storage costs. Again there is an injury — the cancellation of the contracts — that is, as alleged, fairly traceable to Woori Bank's conduct of improperly dishonoring the letter of credit.  It almost goes without saying that Plaintiff's injury would be redressed by payment.

Woori Bank protests that it is not clear who cancelled the contracts and thus the injury is not "fairly traceable" since there is a possible intervening factor.  However, the existence

of an intervening cause is "not necessarily fatal to standing"
since "fairly traceable" requires less than a showing of
proximate cause. Rothstein v. UBS AG, 708 F.3d 82, 91–92 (2d
Cir. 2013).  Indeed, at the pleading stage, this burden is
"relatively modest." Id. at 92.  Here, Plaintiff alleges that
the contracts were to be paid by the same letter of credit,
Woori Bank was made aware that failure to honor the letter of
credit would lead to cancellation of the contracts, and Woori
Bank's failure to pay actually led to the cancellation of the
contracts.  For the purposes of standing, this is a sufficient
causal nexus to show that Plaintiff's alleged injury is "fairly
traceable" to Defendant's failure to honor the letter of credit.

### B. Failure to State a Claim

#### 1. Legal Standard

A complaint will survive a 12(b)(6) motion only if it
pleads "enough facts to state a claim to relief that is
plausible on its face." Barrows v. Burwell, 777 F.3d 106, 111–12
(2d Cir. 2015) (internal quotation marks omitted).  Plausibility
"simply calls for enough fact to raise a reasonable expectation
that discovery will reveal evidence" to support the claim. Bell
Atl. Corp. v. Twombly, 550 U.S 544, 556 (2007).  In assessing
the sufficiency of the complaint, a court may also look to
exhibits attached to the complaint or documents the complaint

incorporates by reference. See Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000).

## 2. Analysis

As discussed earlier, the Court construes Plaintiff's claim as one for wrongful dishonor of a letter of credit. Since the letter of credit is separate and independent from the underlying contract, an issuing bank must pay the seller if the seller presents documents that conform to the requirements of the letter of credit. See ACE Am. Ins. Co., 2014 WL 4953566, at *8. The seller's documents must strictly conform to the letter of credit's terms. See Bouzo v. Citibank, N.A., 96 F.3d 51, 59 (2d Cir. 1996); Nissho Iwai Eur. PLC v. Korea First Bank, 99 N.Y.2d 115, 121–22 (2002).   Thus, to succeed on such a claim, a plaintiff must demonstrate that:  (1) there exists a letter of credit issued by the defendant for the benefit of the plaintiff; (2) plaintiff timely presented strictly conforming documents to defendant as required by the letter of credit; and (3) defendant failed to pay plaintiff as provided by the letter of credit. See also Heritage Bank v. Redcom Labs., Inc., 250 F.3d 319, 325 (5th Cir. 2001).

Plaintiff's complaint satisfies each prong.  As to the first, Plaintiff alleges that Woori Bank issued the letter of credit on December 28, 2010 in favor of ACR Systems. (Compl. ¶ 5.)  Although a copy of the letter of credit is not attached to

the complaint, Plaintiff explains the absence by alleging that
Defendant never supplied it with a copy. (Id. ¶ 10.)  The
plausible existence of the letter of credit is supported by
Exhibit A, which acknowledges that Woori Bank has issued or will
issue a letter of credit.  Further, ACR Systems alleges that
Woori Bank actually paid part of the balance owed on the letter
of credit. (Id. ¶ 8.)  These facts, taken together, suggest that
there is a "reasonable expectation" that discovery would show
the existence of the letter of credit. See Twombly, 550 U.S at
556.  Plaintiff also easily satisfies the third requirement by
alleging that Woori Bank paid only $28,099.11 of the $85,862.00
owed under the letter of credit, leaving $57,762.89 outstanding.
(Id. ¶ 8-9.)

The second prong, although less straightforward, is also
met.  At first blush, Plaintiff's bald assertion that it "timely
complied" with "all of the terms, preconditions and requirements
of the subject letter of credit" lacks specificity. See Brown v.
Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014) ("Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice, and we are not bound to
accept as true a legal conclusion couched as a factual
allegation." (citation omitted) (internal quotation mark
omitted)).  However, taken together with Exhibit A, the
allegation is sufficient to satisfy the second prong.  Exhibit A

indicates that the expiration date for the letter of credit was April 30, 2012.[5]  Exhibit A also lists the "Documents Required" and "Additional Conditions."  Thus, fairly read as a whole, the complaint alleges that Plaintiff provided Woori Bank with all of the documents listed under the "Documents Required" and complied with all of the "Additional Conditions" by April 30, 2012. Similar to the first prong, further support for the plausibility of Plaintiff's timely compliance is evidenced by Woori Bank's partial payment.  Additionally, Plaintiff alleges that it completed the shipment to Woong Kook in February 2012, which would have given Plaintiff at least two months to comply with the requirements of the letter of credit.

Although Plaintiff has sufficiently pled a claim for wrongful dishonor, Defendant's standing argument also indirectly attacks Plaintiff's entitlement to the damages sought. Plaintiff would only be entitled to those damages that are incidental to the wrongful dishonor. See ITM Enters., Inc. v. Bank of N.Y., 302 A.D.2d 359, 361 (N.Y. App. Div. 2003).  If, as Defendant suggests, the damages are actually consequential damages, Plaintiff cannot recover under a theory of wrongful dishonor. See id.  Since Defendant's motion focused on

---

[5] It is listed as "120430."  The Court concludes, at least for the purposes of this motion, that those numbers translate to April 30, 2012, because Exhibit A also lists the date of issue, which Plaintiff alleges was December 28, 2010, as "101228."  This indicates that the numbers are in YYMMDD format.

Plaintiff's complaint as three separate causes of action, neither party squarely addressed the issue of damages.  Thus, the Court will not, at this early stage, get into line drawing for the damages that Plaintiff labelled as its second cause of action (i.e., the value of the cancelled contracts, travel costs, legal fees, and storage costs), since those damages at least plausibly flow from the dishonored letter of credit.

The Court will, however, address the damages sought under the first and third cause of actions, since their availability can be easily determined from the face of the complaint. Plaintiff's demand for the balance owed on the letter of credit is plainly incidental to the wrongful dishonor.  Thus, Plaintiff would be entitled to recovery if it can prove its claim.

Plaintiff, however, is not entitled to recover the damages labeled as its third cause of action.  ACR Systems alleges that it demanded Woori Bank to return the military defense goods and incurred damages from Defendant's failure to return those items. Yet there is no allegation in the complaint that Defendant ever had possession of the goods, and the Court is skeptical that the bank would have taken possession of military defense goods. This skepticism is particularly well earned since the underlying contract and letter of credit are separate, and Plaintiff would likely only be presenting Defendant with documents to satisfy the demands of the letter of credit.  Without an allegation that

Defendant had possession of the goods, the Court can discern no reason that Plaintiff would be entitled to recover from Defendant for failure to return them.  Therefore, from the face of the complaint, Plaintiff is not entitled to those damages stemming from Defendant's alleged failure to return the military defense goods.

Thus, Plaintiff has pled sufficient facts to support its claim for wrongful dishonor.  Plaintiff may seek those damages labeled as its first and second cause of action, subject to the limit on consequential damages discussed above, but is not entitled to the damages it labels as its third cause of action.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for lack of standing is denied.  Defendant's motion to dismiss for failure to state a claim is granted as to the third cause of action and denied as to the first and second causes of action.

**SO ORDERED.**

Dated:    New York, New York
          March 25, 2015

                                    JOHN F. KEENAN
                              United States District Judge

- 16 -