USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/08/2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
ACR SYSTEMS, INC.,                 :
                                   :
                    Plaintiff,     :
                                   :        14 Civ. 2817 (JFK)
        -against-                  :
                                   :        **OPINION & ORDER**
WOORI BANK,                        :
                                   :
                    Defendant.     :
-----------------------------------X

APPEARANCES

For Plaintiff ACR Systems, Inc.:

LAW OFFICE OF JOHN E. CONE JR.
     John E. Cone Jr.
MARC M. COUPEY LAW, PLLC
     Marc M. Coupey

For Defendant Woori Bank:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     Robert S. Friedman
     Rena Andoh
     Shin Y. Hahn

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Woori Bank's ("Woori") motion to dismiss Plaintiff ACR Systems Inc.'s ("ACR") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The amended complaint asserts claims for wrongful dishonor of a letter of credit, civil conspiracy, and punitive damages. For the reasons set forth below, Woori's motion is DENIED as to the wrongful dishonor claim and GRANTED as to the claims for civil conspiracy and punitive damages.

## I. Background

The following facts are drawn from the amended complaint and its attached exhibits.  ACR is a Texas corporation authorized by the U.S. Government to supply military goods to various foreign governments. (Am. Compl. ¶¶ 2, 6.)  Woori is a South Korean bank, owned in part by the government of South Korea, with a branch in Manhattan. (Id. ¶ 3.)  Nonparty Woong Kook is an agent of the Defense Ministry of South Korea ("DAPA"). (Id. ¶¶ 4-5.)

In January 2011, ACR entered into five contracts with Woong Kook to provide certain custom military goods to DAPA. (Id. ¶ 17.)  The value of the first contract was $85,862.00. (Id. ¶ 18.)  The value of the other four contracts totaled $250,270.08. (Id. ¶ 17.)  Payment for the goods covered by the first contract was to be made by a letter of credit, which is attached as Exhibit A to the complaint. (Id. ¶ 19.)  The letter of credit bears an issue date of December 28, 2010, and an expiration date of April 30, 2012. (See id. Ex. A at 1.)  By its terms, the letter is "subject to the ICC UCP600 [the Uniform Customs and Practice for Documentary Credits] and URR [Uniform Rules for Bank-to-Bank Reimbursements Under Documentary Credits] latest version." (Id. at 2.)

"Generally, letters of credit are designed to substitute for, and therefore support, an obligation to pay." All Serv.

2

Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A., N.Y. Branch, 921 F.2d 32, 34 (2d Cir. 1990).  A transaction covered by a letter of credit typically involves three distinct agreements.  First, there is the underlying sale-of-goods contract between the buyer and seller. Alaska Textile Co. v. Chase Manhattan Bank, N.A., 982 F.2d 813, 815 (2d Cir. 1992).  Second, there is the buyer's agreement with a bank to issue the letter of credit to the seller, as beneficiary. Id. Third, there is the letter of credit itself, which obligates the bank to pay the seller when it presents certain documents to the bank (e.g., documents of title, transport and insurance documents, and commercial invoices) that conform with the terms of the credit. Id.

In this case, Woori was the issuing bank and ACR was the seller-beneficiary.  The letter of credit required ACR to present specified documents to receive payment, including bills of lading for the shipped goods, a signed commercial invoice, and an "inspection acceptance certificate" from DAPA, the South Korean authority receiving the goods. (See Am. Compl. Ex. A. at 2.)  A January 17, 2011 amendment to the letter of credit, attached as Exhibit B to the complaint, specified that Woong Kook was to forward the acceptance certificate to ACR within seven days of the date it was issued by DAPA, and that ACR's

3

"statement to the bank that this was not done" would be "a cause to draw against the Letter of Credit." (Id. Ex. B.)

On February 23, 2012, ACR delivered the military goods covered by the first contract for shipment to South Korea. (Id. ¶ 22.) Despite the fact that the goods allegedly arrived to DAPA in "good order and condition," ACR did not receive an acceptance certificate from DAPA. (Id. ¶¶ 23-24.) According to the complaint, ACR timely notified Woori that it did not receive the acceptance certificate and "timely complied with all preconditions and requirements of the Letter of Credit by tendering to Woori all documentation and information required by the Letter of Credit." (Id. ¶¶ 24-25.)

Notwithstanding ACR's alleged compliance with the terms of the letter of credit, Woori paid only $28,099.11 of the $85,862.00 due, leaving $57,762.89 outstanding. (Id. ¶ 26.) Thereafter, ACR repeatedly requested payment of the remaining amount due, but Woori did not pay. (Id. ¶ 27.) According to the complaint, Woori claimed that ACR's failure to present a DAPA acceptance certificate prevented it from paying any amount under the letter of credit, but that Woori nonetheless had made partial payment after accounting for certain deductions demanded by Woong Kook and DAPA. (Id. ¶¶ 36-37.)

ACR alleges that Woori wrongfully dishonored the letter of credit, and that "Woori and Woong Kook colluded to deny the

4

existence of and supply false information regarding the Letter of Credit and Woori's legal obligation to pay ACR the face amount of the Letter of Credit." (Id. ¶¶ 37-38.)  ACR claims that, after this case was filed, Woori and its employees stated that they did not have a copy of the letter of credit and, when they were presented within it, claimed that they did not understand its terms. (Id. ¶ 38(a).)  According to ACR, Woori and Woong Kook's collusion was also evidenced by Woong Kook's filing of a separate lawsuit against ACR in Texas after this case was filed. (Id. ¶ 38(g)-(k).)  ACR claims that this "led to false and malicious publications claiming that ACR had engaged in fraud with Woong Kook regarding the shipment in question." (Id. ¶ 54.)

Based on these allegations, ACR asserts three claims: (1) wrongful dishonor of the letter of credit, (2) civil conspiracy; and (3) punitive damages.  ACR seeks to recover $385,032.97 on the wrongful dishonor claim, including the amount still owed on the first contract plus $250,270.08 in damages flowing from the cancellation of the remaining four contracts, along with inventory and travel expenses. (Id. ¶¶ 43-46.)  ACR also seeks damages of $2,400,000.00 on the civil conspiracy claim, as well as punitive damages in an amount to be set by the Court. (Id. ¶¶ 51, 59.)

## II. Procedural History

ACR filed its complaint on February 10, 2014, in the Supreme Court of New York in Westchester County.  Woori removed the case to this Court on April 18, 2014, on the basis of diversity jurisdiction.  On June 23, 2014, Woori moved to dismiss the complaint for lack of standing and failure to state a claim upon which relief may be granted.  This Court granted in part and denied in part Woori's motion in a March 25, 2015 Opinion & Order.  See ACR Sys., Inc. v. Woori Bank, No. 14 CIV. 2817 JFK, 2015 WL 1332337 (S.D.N.Y. Mar. 25, 2015).  On February 17, 2016, the Court granted ACR leave to amend its complaint. ACR filed the amended complaint on April 1, 2016, asserting for the first time claims for civil conspiracy and punitive damages. Woori then filed the instant motion to dismiss under Rule 12(b)(6), which was fully briefed on June 17, 2016.  The Court heard oral argument on the motion on June 28, 2016.

## III. Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

6

(2009).  When considering a motion to dismiss under Rule
12(b)(6), a court must accept the complaint's factual
allegations as true and draw all reasonable inferences in the
plaintiff's favor. Segarra v. Fed. Reserve Bank of N.Y., 802
F.3d 409, 411 (2d Cir. 2015).

Although the statute of limitations is ordinarily an
affirmative defense that must be raised in the answer, the
defense may be decided on a Rule 12(b)(6) motion if it appears
on the face of the complaint. Ellul v. Congregation of Christian
Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing Staehr v.
Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008)).
"[T]he complaint is deemed to include any written instrument
attached to it as an exhibit or any statements or documents
incorporated in it by reference." Cortec Indus., Inc. v. Sum
Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).

## IV. Discussion

In moving to dismiss the amended complaint, Woori argues
(1) that ACR's wrongful dishonor claim is time-barred from the
face of the complaint; (2) that even if the claim is timely, it
is inadequately alleged; (3) that the complaint fails to state a
claim for civil conspiracy; and (4) that ACR's standalone claim
for punitive damages must be dismissed because such damages are
unavailable.  As explained below, the Court disagrees with

7

Woori's first two arguments and agrees with its latter two
arguments.

### A.  ACR's Wrongful Dishonor Claim Is Timely As Alleged

As a federal court sitting in diversity in New York, this
Court applies New York's choice-of-law rules. See Thea v.
Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015).  Where, as here,
a nonresident plaintiff suffers an injury outside the state, New
York's borrowing statute, N.Y. C.P.L.R. § 202, requires the
plaintiff's action to be timely under the limitations periods of
both New York and the jurisdiction where the cause of action
accrued. N.Y. C.P.L.R. § 202; Thea, 807 F.3d at 497.  A cause of
action accrues at the place of injury, which in the case of a
purely economic injury is the place where the plaintiff resides
and therefore sustains the economic impact of the loss. Glob.
Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999).  Because
ACR resides in Texas, where it is incorporated and maintains its
principal place of business, the place of the alleged injury in
this case is Texas. See id.  Thus, ACR's wrongful dishonor claim
must be timely under the law of both New York and Texas to
survive.

Woori argues that ACR's claim is barred by the one-year
statute of limitations set forth in Article 5 of the New York
U.C.C. See N.Y. U.C.C. § 5-115.  By its own terms, however,
Article 5's one-year statute of limitations applies only to

8

"[a]n action to enforce a right or obligation arising under this article." Id.   The Court must therefore determine whether Article 5 supplies the substantive law on which ACR's claim is based.

Article 5 itself sets forth New York's choice-of-law rules for actions to recover on a letter of credit. See id. § 5-116. Three provisions are relevant to the Court's determination of what law governs Woori's liability.   First, Section 5-116(a) directs that an issuer's liability is governed by the law of the jurisdiction chosen by an agreement between the parties. See id. § 5-116(a).   In full, the provision reads:

> The liability of an issuer, nominated person, or adviser for action or omission is governed by the law of the jurisdiction chosen by an agreement in the form of a record signed or otherwise authenticated by the affected parties in the manner provided in section 5-104 or by a provision in the person's letter of credit, confirmation, or other undertaking. The jurisdiction whose law is chosen need not bear any relation to the transaction.

Id. § 5-116(a).   This section does not apply here because the letter of credit does not designate a particular jurisdiction's law.

Next, Section 5-116(b) sets forth the rules for determining what jurisdiction's substantive law controls where the parties have not chosen a particular jurisdiction's law in their agreement.   It provides:

9

> Unless subsection (a) of this section applies, the liability of an issuer, nominated person, or adviser for action or omission is governed by the law of the jurisdiction in which the person is located. The person is considered to be located at the address indicated in the person's undertaking. If more than one address is indicated, the person is considered to be located at the address from which the person's undertaking was issued. For the purpose of jurisdiction, choice of law, and recognition of interbranch letters of credit, but not enforcement of a judgment, all branches of a bank are considered separate juridical entities and a bank is considered to be located at the place where its relevant branch is considered to be located under this subsection.

Id. § 5-116(b). Woori's Seoul, South Korea branch issued the letter of credit here, and the letter of credit requires all documents to be sent to Woori's Seoul branch. (Am. Compl. Ex. A at 1, 3.) Thus, Woori's liability is determined by South Korea law under this subsection. Woori's New York branch's status as drawee and reimbursing bank is of no moment because Section 5-116(b) is clear that the law of the issuer's jurisdiction controls.

But where, as here, the parties designate that the letter of credit is subject to rules of custom or practice, those rules govern, even in the event of a conflict with Article 5. Specifically, Section 5-116(c) states:

> Except as otherwise provided in this subsection, the liability of an issuer, nominated person, or adviser is governed by any rules of custom or practice, such as the

10

> uniform customs and practice for documentary credits, to which the letter of credit, confirmation, or other undertaking is expressly made subject. If (1) this article would govern the liability of an issuer, nominated person, or adviser under subsection (a) or (b) of this section, (2) the relevant undertaking incorporates rules of custom or practice, and (3) there is conflict between this article and those rules as applied to that undertaking, those rules govern except to the extent of any conflict with the nonvariable provisions specified in subsection (c) of section 5-103.

Id. § 5-116(c). Accordingly, the UCP and URR govern Woori's liability and are supplemented, to the extent necessary, by the substantive law of South Korea.

Because the rights and obligations at issue here do not arise from Article 5, by its own terms Section 5-115's one-year statute of limitations does not apply. As a result, the relevant New York statute of limitations is N.Y. C.P.L.R. § 213(2), which provides a six-year limitations period for breach of contract actions. See New Indoafric Exports Private Co. v. Citibank, N.A., No. 15-CV-9386 (VM), 2016 WL 6820726, at *3 (S.D.N.Y. Nov. 7, 2016) (applying N.Y. C.P.L.R. § 213(2)'s six-year statute of limitations to a wrongful dishonor claim where the letter of credit at issue predated the enactment of Article 5's one-year statute of limitations). Likewise, because the Texas U.C.C. is identical in all relevant respects to the New York U.C.C. and is therefore inapplicable to ACR's claim for

11

the same reasons, Texas' four-year statute of limitations for breach of contract actions is the relevant period under Texas law. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (West); Williams v. Unifund CCR Partners Assignee of Citibank, 264 S.W.3d 231, 234 (Tex. App. 2008).

Under these limitations periods, ACR's claim for wrongful dishonor is timely as alleged.  The claim could not have accrued before the letter of credit was issued on December 28, 2010. Thus, based on the complaint, the claim was timely under both Texas' four-year limitations period and New York's six-year limitations period when brought on February 10, 2014.

**B. The Complaint States a Claim for Wrongful Dishonor**

To prevail on a claim for wrongful dishonor of a letter of credit, a plaintiff must demonstrate:  (1) that there exists a letter of credit issued by the defendant for the benefit of the plaintiff; (2) that the plaintiff timely presented conforming documents to the defendant as required by the letter of credit; and (3) that the defendant failed to pay the plaintiff on the letter of credit. See UCP Art. 7(a); see also Heritage Bank v. Redcom Labs., Inc., 250 F.3d 319, 325 (5th Cir. 2001).  There is no serious dispute that ACR has adequately alleged the first and third elements.  The letter of credit is attached to the complaint, and ACR claims that Woori paid only $28,099.11 of the

$85,862.00 due, leaving $57,762.89 outstanding. (Am. Compl. ¶¶ 19, 26.)

The second element is also met.  ACR alleges that it "timely complied with all preconditions and requirements of the Letter of Credit by tendering to Woori all documentation and information required by the Letter of Credit." (Id. ¶ 24.) While Woori argues that this allegation is conclusory, the rest of the complaint supplies sufficient context to satisfy ACR's pleading burden.  The letter of credit indicates that its expiration date was April 30, 2012. (Id. Ex. A at 1.)  It also lists the "Documents Required" and "Additional Cond[itions]" for ACR to receive payment. (Id. Ex. A at 2.)  Thus, taken as a whole, the amended complaint alleges that ACR provided Woori with all of the documents listed under "Documents Required" and complied with all of the "Additional Conditions" by April 30, 2012.  Further, ACR alleges that the letter of credit was amended to allow it to provide written notice of its failure to receive a DAPA acceptance certificate in lieu of the certificate itself. (Id. ¶ 20.)  ACR attaches the alleged amendment as Exhibit B to the amended complaint and asserts that it "timely delivered such a written notice to Defendant, which Defendant received (attached as Exhibit C)." (Id.)  ACR's counsel acknowledged at oral argument that the document attached as Exhibit C was appended in error and is not the correct notice.

(See Oral Arg. Tr. 17:8-18:3.)  However, at this stage, the
Court nonetheless assumes the truth of ACR's allegation that it
timely delivered such notice to Woori.  Accordingly, Woori's
motion to dismiss is denied as to ACR's wrongful dishonor claim.

## C.  ACR Fails to Adequately Allege a Civil Conspiracy Claim

Both parties' arguments with respect to ACR's civil
conspiracy claim rely on New York law.  (See Pl.'s Mem. at 10-15;
Def's Mem. at 10-20.)  New York does not recognize an
independent tort of conspiracy, see Kirch v. Liberty Media
Corp., 449 F.3d 388, 401 (2d Cir. 2006), but does allow a claim
for civil conspiracy to "connect the actions of separate
defendants with an otherwise actionable tort." Alexander &
Alexander of N.Y., Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986).
Thus, "a claim for civil conspiracy may stand only if it is
connected to a separate underlying tort." Treppel v. Biovail
Corp., No. 03 CIV. 3002 (PKL), 2005 WL 2086339, at *5 (S.D.N.Y.
Aug. 30, 2005).  Once that threshold showing has been made, the
plaintiff must establish four additional elements:  "(1) an
agreement between two or more parties; (2) an overt act in
furtherance of the agreement; (3) the parties' intentional
participation in the furtherance of a plan or purpose; and
(4) resulting damage or injury." Id.

ACR argues that it has adequately pleaded fraud as the tort
underlying its civil conspiracy claim.  To establish common law

fraud under New York law, a plaintiff must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995).  Under Federal Rule of Civil Procedure 9(b), a plaintiff asserting a claim sounding in fraud must plead the circumstances constituting fraud "with particularity," FED. R. CIV. P. 9(b).  The complaint must therefore "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).

ACR fails to plausibly allege fraud, and its allegations fall well short of satisfying Rule 9(b)'s heightened pleading requirement.  ACR first argues that Woori "fraudulently omitted from its communications with ACR that it paid all monies due under the first contracts referenced in the letter of credit to Woong Kook." (Pl.'s Mem. at 10.)  But this allegation is not in the complaint, and even if it were, ACR fails to explain how this would amount to an actionable omission.  ACR next argues that Woori "fraudulently claimed that the lack of a DAPA

15

acceptance certificate prevented it from paying ACR the monies due" on the letter of credit. (Id.)  But ACR provides no adequate explanation for how Woori's position on its legal obligations under the letter of credit constitutes a false statement.  Nor does ACR allege facts demonstrating an intent to defraud.  Further, ACR fails to meet Rule 9(b)'s heightened pleading requirement by alleging when, where, and by whom the alleged misrepresentations were made.  Accordingly, ACR's civil conspiracy claim is dismissed.

### D. Punitive Damages Are Not Available

New York does not recognize a separate cause of action for punitive damages. Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).  Further, insofar as the damages on ACR's wrongful dishonor claim are governed by Korean law, punitive damages are unavailable. See Byung-Suk Chung & Chul-Won Lee, Korea, in TRANSNATIONAL LITIGATION § 19: 100 (John Fellas ed., 2016) ("Korean law does not recognize punitive damages or multiple damages which are not related to the actual damage suffered by the obligee."); In Hyeon Kim, An Introduction to Korean Law Governing Carriage of Goods by Sea, 36 J. MAR. L. & COM. 447, 461 (2005) ("Punitive damages are not part of Korean law; only compensatory damages are.").  As a result, ACR's claim for punitive damages is dismissed.

### E. Leave to Amend

ACR requests leave to amend the complaint to cure any deficiencies identified by the Court.  Leave to amend a pleading should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), but should be denied when an amendment is offered in bad faith, would be futile, or would cause undue delay or prejudice. Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008).  Because punitive damages are not available as a standalone claim, leave to amend the cause of action for punitive damages is denied as futile.  This has no bearing, however, on whether ACR may seek punitive damages as a remedy on a properly asserted claim for civil conspiracy if one is later stated.

Turning to the civil conspiracy claim itself, ACR fails to indicate in its opposition papers what it might add to the complaint to make the claim viable.  While ACR claims to have recently discovered evidence showing a payment of $85,862.00 from Woori to Woong Kook, (see Decl. of John E. Cone Jr., Esq. ¶ 3), this new allegation does not support a claim for fraud and would not cure the civil conspiracy claim's deficiencies. Accordingly, if ACR wishes to amend the civil conspiracy claim, it must file an application with the Court attaching its proposed amendments and explaining how those amendments would allow the civil conspiracy claim to survive a motion to dismiss.

17

Any such application must be made no later than 30 days from the date of this order.

## Conclusion

For the reasons set forth above, Woori's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) is DENIED as to ACR's wrongful dishonor claim and GRANTED as to ACR's claims for civil conspiracy and punitive damages.  The civil conspiracy claim is dismissed without prejudice, and the punitive damages claim is dismissed with prejudice.

**SO ORDERED.**

Dated:     New York, New York
           February 8, 2017

                                        _____
                                        JOHN F. KEENAN
                                        United States District Judge