UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ X

ACR SYSTEMS, INC.,                    :
                                      :
                    Plaintiff,        :
                                      :
      -against-                       :        No. 14 Civ. 2817 (JFK)
                                      :        **OPINION & ORDER**
WOORI BANK,                           :
                                      :
                    Defendant.        :
------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/10/2018

APPEARANCES

FOR PLAINTIFF ACR SYSTEMS, INC.
      John E. Cone Jr.
      LAW OFFICE OF JOHN E. CONE JR.

      Marc M. Coupey
      MARC M. COUPEY LAW, PLLC

FOR DEFENDANT WOORI BANK
      Robert S. Friedman
      Rena Andoh
      Shin Y. Hahn
      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Plaintiff ACR Systems, Inc. ("ACR") for leave to file a second amended complaint. ACR asserts that new allegations in the proposed second amended complaint (the "SAC") cure the deficiencies identified by the Court in its previous Opinion and Order, which granted in part and denied in part a motion by Defendant Woori Bank ("Woori") to dismiss ACR's first amended complaint (the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, ACR's motion for leave to file the SAC is denied.

# I. Background

The facts underlying this case were thoroughly discussed in the Court's Opinion and Order granting in part and denying in part Woori's motion to dismiss the FAC (the "February 8 Order"). (See Op. & Order at 2-5, ECF No. 94 (filed Feb. 8, 2017).) Nevertheless, the Court will summarize the factual and procedural background that is relevant to the instant motion.

## A. Factual Background

The following facts are drawn from the FAC and its attached exhibits. ACR is a Texas corporation that is authorized by the U.S. Government to supply military goods to various foreign governments. (Am. Compl. ¶¶ 2, 6, ECF No. 47 (filed Apr. 1, 2016) [hereinafter FAC].) Woori is a South Korean bank, owned in part by the government of South Korea, with a branch in Manhattan. (Id. ¶ 3.) Non-party Woong Kook Co. Ltd. ("Woong Kook") is an agent of the Defense Ministry of South Korea ("DAPA"). (Id. ¶¶ 4-5.)

In January 2011, ACR entered into five contracts with Woong Kook to supply custom military goods to DAPA. (Id. ¶¶ 16-17.) The value of the first contract was $85,862, and the value of the remaining four contracts totaled $250,270.08. (Id. ¶¶ 17-18.) ACR was to be paid by a letter of credit, which was numbered MD1G8012GU00032 and dated December 28, 2010 (the "Letter of Credit.") (Id. ¶ 19.) In the transactions

contemplated, Woong Kook would act as the purchaser-applicant,
Woori would issue the Letter of Credit, and ACR would act as the
seller-beneficiary. (See Op. & Order at 2-3, ECF No. 94.)

In January 2011, the Letter of Credit was amended to permit
Woori to make payments to ACR in the absence of an "inspection
acceptance certificate" from DAPA ("Acceptance Certificate").
(See FAC ¶ 20; see also FAC Ex. B.)  In the event that ACR did
not receive an Acceptance Certificate within seven days of
DAPA's receipt of a shipment, ACR's "statement to [Woori]" that
no Acceptance Certificate was received would "be a cause to draw
against the Letter Of Credit." (Id.)

At the end of February 2012, ACR shipped the military goods
covered by the first contract (the "Goods") to South Korea. (FAC
¶ 22.)  Although the Goods were delivered to DAPA in "good order
and condition," ACR did not receive an Acceptance Certificate.
(Id. ¶¶ 23-24.)  ACR notified Woori that it did not receive an
Acceptance Certificate and "timely complied with all
preconditions and requirements of the Letter of Credit by
tendering to Woori all documentation and information required by
the Letter of Credit[.]" (Id. ¶¶ 24-25.)

However, purportedly after applying deductions demanded by
Woong Kook and DAPA, Woori paid ACR only $28,099.11. (Id. ¶ 26.)
The partial payment left an amount of $57,762.89 outstanding.
(Id.)  Thereafter, ACR repeatedly requested payment of the

remaining amount due, but Woori refused to pay. (Id. ¶ 27.)
Despite its partial payment to ACR, Woori claimed that ACR's
failure to present an Acceptance Certificate prevented it from
paying any amount under the Letter of Credit. (Id. ¶¶ 36-37.)

According to ACR, Woori and Woong Kook "colluded" in
various ways to injure ACR.  For example, the deductions
requested by Woong Kook and DAPA were "fabricated, wholly
false[,] and unjustified." (Id. ¶ 37.)  Also, Woong Kook
allegedly "works extensively with and does multimillion dollars'
worth of business with Woori on a regular basis[.]" (Id. ¶
38(c).)  ACR claims further that "[n]either Woori nor Woong Kook
took any action, to date, to encourage, require or notify DAPA
to return" the Goods to ACR. (Id. ¶ 38(f).)  Finally, ACR points
to a separate lawsuit, filed in Texas by Woong Kook against ACR,
as evidence of collusion between Woori and Woong Kook. (Id. ¶
38(g)-(i).)

### B. Procedural Background

After ACR filed the original complaint in the Supreme Court
of New York, County of Westchester, Woori removed the case to
this Court on the basis of diversity jurisdiction. (Notice of
Removal at 2, ECF No. 1 (filed Apr. 18, 2014).)  On June 23,
2014, Woori moved to dismiss the complaint for lack of standing
and failure to state a claim upon which relief may be granted.
(See Op. & Order at 6, ECF No. 94.)  On March 25, 2015, the

Court granted in part and denied in part Woori's motion to dismiss. (Op. & Order at 16, ECF No. 29 (filed Mar. 25, 2015).)

ACR filed the FAC on April 1, 2016, asserting claims for civil conspiracy and punitive damages for the first time. (See FAC ¶¶ 47-59.) On February 8, 2017, the Court granted in part and denied in part Woori's motion to dismiss the FAC pursuant to Rule 12(b)(6). (Op. & Order at 18, ECF No. 94.) The Court determined that the FAC stated a claim for wrongful dishonor. (Id. at 12-14.) The Court also found that the FAC did not state a claim for civil conspiracy because ACR failed to adequately plead the tort underlying its civil conspiracy claim, i.e., fraud. (Id. at 14-16.) Finally, the Court dismissed ACR's claim for punitive damages with prejudice. (Id. at 16-18.)

However, the Court dismissed the claim for civil conspiracy without prejudice. (Id. at 18.) The Court observed that, "[w]hile ACR claims to have recently discovered evidence showing a payment of $85,862.00 from Woori to Woong Kook, this new allegation does not support a claim for fraud and would not cure the civil conspiracy claim's deficiencies." (Id. at 17 (citation omitted).) Accordingly, the Court ordered that, "if ACR wishes to amend the civil conspiracy claim, it must file an application with the Court attaching its proposed amendments and explaining how those amendments would allow the civil conspiracy claim to survive a motion to dismiss." (Id.)

## C. ACR's Motion for Leave to File the SAC

On April 14, 2017, ACR filed the instant motion for leave to file the SAC. (Mot. to Amend, ECF No. 101 (filed Apr. 14, 2017).) ACR interprets the February 8 Order as requiring it to "include in its proposed Amended Complaint all independent torts upon which its conspiracy claims are grounded."[1] (Pl. Reply at 4-5, ECF No. 105 (filed Apr. 14, 2017).) Thus, whereas the FAC asserted three causes of action (i.e., wrongful dishonor, civil conspiracy, and punitive damages), the SAC asserts nine causes of action. ACR now brings claims for: (1) wrongful dishonor; (2) fraud; (3) conspiracy to commit fraud; (4) aiding and abetting fraud; (5) fraudulent concealment; (6) conspiracy to commit fraudulent concealment; (7) conversion; (8) conspiracy to commit conversion; and (9) aiding and abetting conversion. (See Decl. of Marc M. Coupey Ex. 1 ¶¶ 96-161, ECF No. 103-1 (filed Apr. 14, 2017) [hereinafter SAC].)

The SAC re-alleges and attempts to expand on claims in the FAC that Woori and Woong Kook colluded to defraud or otherwise harm ACR. For example, ACR claims that the fact that Woori "made all deductions from payment due under the [Letter of Credit] enumerated by Woong Kook" is evidence of "a conspiracy

_____

[1] According to ACR, the SAC "include[s] all proposed amendments to its complaint[.]" (Pl. Reply at 5 n.1, ECF No. 105 (filed Apr. 14, 2017).)

and aiding and abetting the fraud of converting" the Goods. (Id.
¶ 49.)  ACR also alleges that Sun Pak, Woori's "letter of credit
manager," neglected to tell ACR that, when Woori made the
partial payment of $28,099.11, "Woori would only pay that amount
. . . and never intended to pay any more." (Id. ¶ 50.)
According to ACR, Pak also claimed that, in the absence of an
Acceptance Certificate, Woori could not legally make payments to
ACR on the Letter of Credit, notwithstanding past practice to
the contrary. (Id. ¶¶ 56-57.) Additionally, Woori purportedly
"falsely transferred title" of the Goods to Woong Kook. (Id.
¶ 81.)  The SAC also contains allegations about Woong Kook's
lawsuit—since dismissed—against ACR in Texas as well as a
general pattern of corruption in South Korean government
agencies. (Id. ¶¶ 83-87, 94-95.)

## II. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure allows a
party to amend its pleadings with leave of the court and further
directs that "[t]he court should freely give leave when justice
so requires." Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though
liberally granted, may properly be denied for:  'undue delay,
bad faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of
the amendment, futility of amendment, etc.'" Ruotolo v. City of

7

New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

"One appropriate basis for denying leave to amend is that the proposed amendment is futile." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Id. "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015); see also Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.").

Accordingly, "[a]s it did in reviewing [Woori's] motion to dismiss the FAC, the Court treats all factual allegations in the SAC as true and draws all reasonable inferences" in ACR's favor. Kuriakose v. Fed. Home Loan Mortg. Corp., 897 F. Supp. 2d 168, 175 (S.D.N.Y. 2012). However, if the SAC does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," then leave to amend may

be denied as futile. <u>Balintulo v. Ford Motor Co.</u>, 796 F.3d 160, 164-65 (2d Cir. 2015) (internal quotation marks omitted).

### III. Discussion

### A. Choice of Law

"Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." <u>Thea v. Kleinhandler</u>, 807 F.3d 492, 497 (2d Cir. 2015). "Under New York choice-of-law rules, 'where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law.'" <u>Alphonse Hotel Corp. v. Tran</u>, 828 F.3d 146, 152 (2d Cir. 2016) (alteration in original) (quoting <u>Fed. Ins. Co. v. Am. Home Assur. Co.</u>, 639 F.3d 557, 566 (2d Cir. 2011)). Here, Woori asserts that New York law applies and argues that ACR "applied New York law in its moving papers and also admitted that there was no conflict between New York and Texas law on [ACR's] claims." (Def. Opp'n at 9 n.7, ECF No. 104 (filed Apr. 14, 2017).) In its reply, ACR does not object to or otherwise challenge Woori's contention. Accordingly, it is appropriate to apply New York law. See <u>Krumme v. WestPoint Stevens Inc.</u>, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting <u>Tehran-Berkeley Civil & Envtl. Eng'rs v.</u>

<u>Tippetts-Abbett-McCarthy-Stratton</u>, 888 F.2d 239, 242 (2d Cir. 1989))).

## B. Claims for Fraud, Fraudulent Concealment, and Conversion

ACR contends that the allegations in the SAC support claims against Woori for fraud, fraudulent concealment, and conversion. In opposition, Woori argues that the allegations in the SAC fail to meet the applicable pleading standards and, therefore, would not survive a motion to dismiss. The Court concludes that the SAC's fraud-based claims do not satisfy Rule 9(b) and that the SAC fails to state a claim for conversion.

### 1. Fraud

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 170 (2d Cir. 2015) (citing <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 910 N.E.2d 976, 979 (N.Y. 2009)). Additionally, Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud. Specifically, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"In essence, Rule 9(b) places two further burdens on fraud plaintiffs—the first goes to the pleading of the circumstances of the fraud, the second to the pleading of the defendant's mental state." Loreley Fin., 797 F.3d at 171. With respect to the circumstances of the fraud, the complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Id. (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)). With respect to the necessary mental state, although "mental states may be pleaded 'generally,' Plaintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" Id. (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner, 459 F.3d at 290-91 (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

In the SAC's second claim for relief, ACR refers vaguely to Woori's "multiple material misrepresentations of fact" to ACR.

(SAC ¶ 106.)  Based on the SAC and ACR's papers in support of its motion, the Court discerns two statements or omissions by Woori that, according to ACR, are fraudulent:  (1) Pak's claim that Woori was prohibited from making payments to ACR on the Letter of Credit without an Acceptance Certificate, and (2) Pak's failure to tell ACR, in connection with a partial payment of $28,099.11, that "Woori would only pay that amount . . . and never intended to pay any more." (SAC ¶¶ 50, 56-57.)  ACR claims that it relied on these misrepresentations to its detriment by continuing to manufacture custom military goods and delaying in bringing suit against Woori. (Id. ¶ 108.)

First, ACR argues that, "shortly after June 15, 2012,"[2] Woori informed ACR that it was prohibited from making payments to ACR on the Letter of Credit without an Acceptance Certificate. (Id. ¶¶ 56-57.)  According to ACR, this statement was untrue because it deviated from past payment practices and because, in fact, no legal or contractual impediment to payment existed.  ACR allegedly received payments related to three prior

_____

[2] In its memorandum, ACR asserts that Pak informed ACR "shortly after June 15, 2011, that Woori would not and could not legally pay the [Letter of Credit] to ACR because it had not received an acceptance certificate from DAPA." (Pl. Mem. at 10, ECF No. 102 (filed Apr. 14, 2017) (emphasis added).)  Looking to the other allegations in the SAC to resolve this contradiction, the Court concludes that ACR's allegation is that Pak made this purportedly fraudulent statement on June 15, 2012. (See SAC ¶ 41 (alleging that the Goods were "ultimately delivered on time on or about March 8, 2012").)

12

shipments despite the absence of an Acceptance Certificate. (SAC ¶¶ 6, 56.)  The SAC, however, inconsistently identifies the entity that made the previous payments. (Id. ¶ 6 ("Woong Kook accepted and paid for the first three shipments made pursuant to the first contract secured by the Letter[.]"), ¶ 56 ("Ms. Pak made this statement despite the fact that she had made payment in full under the Letter for the first three shipments made by ACR when no DAPA certificates were issued.").)  Even assuming that Woori had previously made payments to ACR without an Acceptance Certificate, the SAC fails to demonstrate Pak's knowledge that her statement was false in an actionable sense, rather than reflecting a new policy regarding payments or a mistaken understanding.

Second, ACR alleges that, on December 20, 2012, Pak "convinced" ACR to accept a partial payment and suggested that ACR could request full payment at a later time, but did not disclose that "Woori would only pay that [partial] amount . . . and never intended to pay any more." (Id. ¶ 50.)  The SAC, however, is devoid of allegations indicating that Pak had contemporaneous knowledge that Woori planned to make no further payments to ACR, thereby rendering her statement false.

Moreover, the Court declines ACR's invitation to draw an adverse inference from Pak's deposition, where she allegedly stated that "Woori had not made any payment whatsoever" under

the Letter of Credit. (See id. ¶ 62; Pl. Mem. at 10, ECF No. 102 (filed Apr. 14, 2014).)  The deposition transcript demonstrates that Pak was responding to a question about a different document numbered MD198012GU00032. (See Decl. of Marc M. Coupey Ex. G, ECF No. 103-11 (filed Apr. 14, 2017).)  The parties agree that the relevant letter of credit for purposes of this proceeding is numbered MD1G8012GU00032. (See SAC ¶ 31; Def. Opp'n at 2 n.1.) Thus, with respect to Pak's alleged misrepresentations, the Court concludes that the SAC fails to allege facts "that give rise to a strong inference of fraudulent intent." Loreley Fin., 797 F.3d at 171 (quoting Lerner, 459 F.3d at 290-91).

Accordingly, the SAC fails to state a claim for fraud.

### 2. Fraudulent Concealment

"[I]nstead of an act of affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." Lerner, 459 F.3d at 291-92 (quoting Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (N.Y. App. Div. 2003)).  "To state a claim for fraudulent concealment, the plaintiff must plead the elements of a fraud claim—substituting a description of what was concealed for what was mis-stated—and must also allege that the defendant had a duty to disclose the specified information and failed to do so." Lefkowitz v. Bank of N.Y., 676 F. Supp. 2d 229, 266 (S.D.N.Y. 2009).  A duty to disclose may arise in two

situations: "first, where the parties enjoy a fiduciary relationship, and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Lerner, 459 F.3d at 292 (quoting Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984)).

Like other claims sounding in fraud, a claim for fraudulent concealment "must comply with the requirements for specificity mandated by Rule 9(b)." Lefkowitz, 676 F. Supp. 2d at 266. Where "the plaintiff is unable to specify the time and place because no act occurred, 'the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud.'" Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (quoting Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).

Even assuming that Woori possessed a duty of disclosure with respect to ACR, it is readily apparent that ACR's claim for fraudulent concealment fails to satisfy the heightened pleading standard of Rule 9(b). The omission in question is Woori's alleged failure to "tell ACR that it was working with Woong Kook

to maximize its profits and business with the government of South Korea through DAPA[.]" (SAC ¶ 129.)  The allegations do not identify who at Woori was responsible for the failure to disclose this information. See Manhattan Motorcars, 244 F.R.D. at 213.  Nor do the allegations provide the context of the omission or describe what Woori obtained as a result of its nondisclosure. See id.  Additionally, the Court doubts that Woori's failure to announce its other business relationships or efforts to "maximize its profits and business with the government of South Korea" generates a strong inference of fraudulent intent. See Bigsy v. Barclays Capital Real Estate, Inc., 170 F. Supp. 3d 568, 578 (S.D.N.Y. 2016) ("Here, the plaintiffs allege that the defendants' motive was to profit financially from their false representations.  The plaintiffs proffer no evidence of who specifically in Barclays stood to benefit from the alleged schemes. . . .  If a mere allegation of corporate profit were sufficient to allege scienter, the requirement would be effectively eliminated.").

Accordingly, the SAC does not state a claim for fraudulent concealment.

### 3. Conversion

ACR alleges that Woori converted the Goods when it "transferred title or legal possession of the[] Military Goods to Woong Kook, . . . [which] transferred same to DAPA." (SAC

¶ 148.)  In New York, the "two elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." <u>Grgurev v. Licul</u>, 229 F. Supp. 3d 267, 285 (S.D.N.Y. 2017) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Colavito v. N.Y. Organ Donor Network</u>, 860 N.E.2d 713, 717 (N.Y. 2006)).  The SAC contains no non-conclusory allegations that Woori exercised dominion over, or otherwise interfered with, the Goods. (<u>See</u> SAC ¶ 148 ("To complete this conversion, Woori transferred title or legal possession of these Military Goods to Woong Kook[.]").)  Rather, the SAC plainly establishes that ACR delivered the Goods directly to Woong Kook. (<u>See</u> <u>id.</u> ¶ 34 ("After Woong Kook's receipt of the shipment of Military Goods . . . Woori was to pay ACR the full amount due."), ¶ 47 ("After having earlier tested and passed the subject Military Goods received from ACR on March 8, 2012 . . . Woong Kook stated that a single inexpensive part . . . was defective.").)  Clearly, these allegations are not sufficient to demonstrate that Woori exercised dominion over, or otherwise interfered with, the Goods.

Accordingly, the SAC does not state a claim for conversion.

## C. Claims for Civil Conspiracy

The SAC also seeks to hold Woori responsible for conspiracy to commit fraud, fraudulent concealment, and conversion, respectively. (SAC ¶¶ 114-119, 137-142, 151-156.) "New York does not recognize an independent tort of conspiracy." Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006). However, "[i]f an underlying, actionable tort is established," then a plaintiff "may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme." World Wrestling Fed'n Entm't, Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001) (internal quotation marks omitted). "To establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Id.

As the Court has already explained, the SAC fails to state a claim for the underlying torts of fraud, fraudulent concealment, or conversion that would support a claim for civil conspiracy. To whatever extent ACR contends that the SAC states claims for the underlying torts based on its allegations of conspiracy, such reasoning places the cart before the horse. (See Pl. Reply at 10 ("Once a conspiracy is established between

Woong Kook and Woori . . . each party is liable for the actions taken by the other in pursuit of this conspiracy.").)  In the absence of an "actionable, underlying tort," ACR's conspiracy-based claims may not proceed. Wang v. Enlander, 17 Civ. 4932 (LGS), 2018 WL 1276854, at *10 (S.D.N.Y. Mar. 6, 2018); see also Kirch, 449 F.3d at 401 ("[S]ince [plaintiff] fails to state causes of action for either of the torts underlying the alleged conspiracy, . . . it necessarily fails to state an actionable claim for civil conspiracy.  The district court thus properly dismissed all of [plaintiff's] claims.").

### D. Aiding and Abetting Claims

Finally, ACR argues that the SAC supports claims that Woori aided and abetted the torts of fraud and conversion, respectively. (SAC ¶¶ 120-127, 157-161.)  Under New York law, the elements of aiding and abetting a conversion and aiding and abetting a fraud are substantially similar. See Kirschner v. Bennett, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009).  Both require "the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." Id.; see also Lerner, 459 F.3d at 292 ("To establish liability for aiding and abetting fraud, the plaintiffs must show '(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's

19

commission.'" (quoting JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005))).

Given the Court's conclusion that the SAC fails to state a claim for the underlying torts of fraud or conversion, ACR's claims for aiding and abetting fraud and conversion should be dismissed due to failure to plead a primary violation. See Prickett v. New York Life Ins. Co., 896 F. Supp. 2d 236, 251 (S.D.N.Y. 2012) ("With the dismissal of all claims for fraud and breach of fiduciary duty, the claim for aiding and abetting should be dismissed for failure to plead a primary violation.").

## Conclusion

For the reasons stated above, the SAC fails to cure the deficiencies identified by the Court in the February 8 Order. Accordingly, ACR's motion for leave to file the SAC is DENIED. Given ACR's concession that the SAC contains "all proposed amendments" regarding the independent torts that could form the basis for a claim of civil conspiracy, ACR's claims for fraud, conversion, and conspiracy are dismissed with prejudice. Likewise, ACR's claims for aiding and abetting fraud and conversion are dismissed with prejudice. Woori is directed to file an answer to ACR's remaining claim by no later than fourteen days from the date of this Opinion.

The Clerk of the Court is respectfully directed to close the motion docketed at ECF No. 101.

**SO ORDERED.**

Dated:     New York, New York
           April 10 , 2018

_John F. Keenan_
John F. Keenan
United States District Judge