# THE LAW OFFICE OF JOHN E. CONE JR.

*Attorneys at Law*

2 Ascot Circle
Mount Kisco, NY 10549
Tel.: (914) 481-6249
jcone@jconelaw.com

November 8, 2018                                                                                                    Via ECF

Honorable John F. Keenan, U.S.D.J.
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: ACR Systems, Inc. v. Woori Bank, Case No. 14-cv-2817 (JFK)

      We are counsel for Plaintiff ACR Systems, Inc. in connection with the captioned matter. Defendant, Woori Bank has asked the Court for permission to file a motion for spoliation in its letter to the court dated October 18, 2018 (the "Woori Letter"). This request will be considered at the previously scheduled November 15, 2018 conference. We oppose this request on the basis that Woori's proposed motion is moot and factually incorrect.

      Woori's counsel propose that the Beneficiary Statement relating to the C56 contract at issue in this Letter of Credit ("LC") dispute, appearing as Exhibit F to ACR's proposed Second Amended Complaint (see Exhibit 5 to the Woori Letter) was somehow invented and that same did not exist because: a) "Woori has no record of the June 14, 2012 Beneficiary Statement (bottom of page 2 of Woori Letter); and b) no proof of ACR having ever sent same to Woori can exist because "ACR … admitted that it failed to preserve the metadata associated with the document [the 2012 Beneficiary Statement] in violation of" FRCP Rule 26(g)(1)(A) (see the two middle paragraphs of page 3 of the Woori Letter), necessitating a motion for spoliation.

      However, counsel for Woori failed to inform the court that pursuant to Article 14(b) of UCP600 (which all parties agree governs the Letter of Credit at issue in this case), the issuing bank, Woori, is required to examine all documents submitted by ACR to satisfy the LC and issue a written statement within five days of ACR's submission as to all discrepancies it believes to exist between the documents received from ACR and the documents called for by the LC, or, as a matter of law, Woori is required to pay ACR the full amount of the LC regardless of any discrepancies. Because, in this case, Woori has neither

issued the required statement of all discrepancies within five days of ACR's submission, nor paid ACR the full amount of the LC, Woori is liable for wrongful dishonor whether it received the Beneficiary Statement referenced in Exhibit F or not. This is shown in the expert opinion rendered by ACR's expert, DONALD R. SMITH, who reviewed all documents exchanged in discovery. His opinion is attached hereto as Exhibit A. See Exhibit A:

Report pages 1-2 (pdf pages 2-3)
Mr. Smith establishes that he has "over 30 years of hands-on work with letters of credit at 4 financial institutions, present[ly] work[s] with companies which are applicants and beneficiaries of letters of credit … [has] continued daily involvement in the subject through the Bankers Association for Finance and Trade; leadership and participation as a member of the US Delegation to the Banking Commission of the International Chamber of Commerce (hereinafter ICC) where [he] participated in the drafting of the *Uniform Customs and Practice for Documentary Credits* (hereinafter UCP600) and co-chaired the *International Standard Banking Practices* publication (hereinafter ISBP)";

Report page 6 (pdf page 7) Lines 135-147
Mr. Smith states "Woori is precluded from dishonoring the documents by their actions, i.e. 1) Woori failed to give notice of dishonor within 5 working days as mandated by the UCP and therefore must pay even if there were discrepancies in the documents; 2) the documents presented did comply with the amended letter of credit and should have been honored upon receipt; 3) Woori improperly deducted significant sums from a payment for contract cancellations thereby violating the UCP's independence principle and 4) by apparently releasing original title documents to their client without making payment to ACR" (*Id.*, *emphasis added*);

Report page 19 (pdf page 20) lines 443-450
Mr. Smith states: "Today (and in 2012) as the issuing bank, under article 14 (b) of UCP - the rules which Woori incorporated into their LC - Woori has a maximum of 5 banking days following the day of receipt to examine documents to determine compliance with the [Letter of] Credit. If Woori notes a discrepancy in the presentation, they must notify the party from whom they received the documents not later than the close of the fifth banking day. If they determine the documents are discrepant, their notice of dishonor must comply with Articles 14 (b) and 16 (a, b, c, d) of UCP600";

Report pages 26-27 (pdf pages 27-28), lines 638-645
Mr. Smith concludes based on his review of the documents exchanged between ACR & Woori regarding the LC at issue: "As noted above, time is of the essence in LC transactions to protect buyers, sellers and the banks involved. Woori failed in at least two ways to follow the requirements stated in UCP 600 Article 16 as explained below. Accordingly, they are precluded from dishonoring the documents by the very rules they chose to subject their Credit to: the UCP 600. The failures by the Bank

were: failure to give notice of dishonor within 5 banking days following the receipt of the documents, and failure to hold the dishonored documents at the disposal of ARC. Therefore, under Article 16 (f) of the UCP 600, they must honor."

That Woori did not issue the required statement of all discrepancies within five days of ACR's submission as required is also shown at the deposition of Sun Pak (an officer of Woori Bank, New York and the head of its letter of credit department).  See Exhibit B, transcript  of the September 20, 2018 deposition of Sun Pak:

> 19 Q When did ACR send the documentation to Woori
> 20 New York?
> 21 A I do not have the record showing when it was
> 22 exactly.
> 23 ATTORNEY HAHN: For the record,
> 24 the exhibit attached to Miss Pak's deposition is
> 25 missing one document.
> 2 The document that's missing in
> 3 this package is Woori NY000085 which I believe to be
> 4 the cover letter of the documents that were sent to
> 5 the New York agency.

(Ex.B, p.83-4, l.l. 19-5)

> 9  ATTORNEY CONE: Okay. So
> 10 Mr. Friedman has been kind enough to give me Woori
> 11 New York 000085. It's a letter from ACR Systems to
> 12 Woori New York dated March 2nd, 2012:
> 13 "Attached please find a set of
> 14 documents for payment negotiation on above-mentioned
> 15 advise. Please forward it to the opening bank for
> 16 approval. Payment should be by wire transfer to so
> 17 and so.
> 18 "Best regards, Ed Levy."
> 19 We will mark this as 15.
> …
> 23 (Whereupon Letter from ACR
> 24 Systems, Inc. dated March 2, 2012 was duly marked
> 25 Plaintiff's Pak Exhibit 15 for Identification.)

(Ex.B, p.85, l.l. 9-22; Pax Ex.15 attached hereto as Exhibit C)

> 19 Q Okay. I want to show you an exhibit that we are
> 20 going to mark as Exhibit 12. It says:
> 21 "Authentication Result Received
> 22 from Network Priority.
> 23 "Advice of Refusal from Woori Bank
> 24 Seoul to Woori Bank New York," and it's dated

> 25 3/16/2012, and ask you do you remember this
> document?
> 3 A Yes, I just remember the notification of that fact.
> 4 ATTORNEY CONE: Let's mark it.
> 5 (Whereupon Authentication Result
> 6 From Network Priority dated March 16, 2012 was duly
> 7 marked Plaintiff's Pak Exhibit 12 for
> 8 Identification.)

(Ex.B, p.57-58, l.l. 19-8; Pax Ex.12 attached hereto as Exhibit D)

Evidence establishes that Woori received from ACR all documentation required by the LC on March 2, 2012 and Woori issued its discrepancy notice to ACR on March 16, 2012. This is a *per se* violation of Article 14(b) of UCP600 which requires that the bank's discrepancy notice be issued within five banking days of receipt of the beneficiary's presentation of documents required by the LC or the bank is precluded from dishonoring the LC. Thus, according to the law and the facts of this case as borne out by discovery, whether Woori received the Beneficiary Statement or not is moot. As a matter of law, Woori is liable for wrongful dishonor regardless.

Further, the evidence gathered in this case directly contradicts the factual statement contained in Woori's Letter claiming that it has no record of ever having received the relevant beneficiary statement. In fact, at the deposition of Oren Levy on September 26, 2018, Woori's counsel introduced as an exhibit, an email from Sun Pak (head of the Woori Bank, New York, letter of credit department) to Ed Levy, president of ACR, dated August 8, 2012, stating that regarding the LC in question, that upon conferring with her boss, Mr. Lee, the head of the letter credit department of Woori Bank Seoul "that the payment [on the LC in question] will be done the front of this week" (see Exhibit E, attached hereto, "Woori NY 000094") Woori would not pay the subject LC unless all documentation required from ACR by that LC was received Woori. Thus, defendant's claims are belied by its own evidence.

Contrary to defendant's claim that plaintiff is guilty of spoliation, that there is no possibility of 'crucial' metadata having being destroyed by plaintiff is shown by the depositions of Eitan ("Ed") Levy and Oren Levy taken September 25 and 26, 2018, and attached to the Woori Letter as Exhibits 9 and 10, respectively, it was established that Ed handled the Woori matter, that Ed is not computer literate, that Ed typed the documents he sent to Woori, which he then sent by mail or overnight delivery. The deposition of Ed Levy disclose:

> 2 Q. Okay. Do you specifically recall
> 3 providing this beneficiary statement to Woori
> 4 Bank in June 2012?
> 5 **A.** You mean this one?
> 6 Q. Yes.
> 7 **A.** It possible. Obviously -- obviously,
> 8 otherwise it wouldn't be there.

4

> 9 Q. Okay. Who would you have sent this
> 10 document to?
> 11 **A.** Ms. Pak.
> 12 Q. Ms. Pak?
> 13 **A.** Yes.
> 14 Q. By the regular method UPS, DHL?
> 15 **A.** Probably, yes.
> 16 Q. Okay.
> 17 **A.** Could be anything else, I don't know.
> 18 Not so sure.
> 19 Q. What -- what do you mean by "anything
> 20 else"? How else did you correspond --
> 21 **A.** DHL, FedEx, UPS, or even the regular
> 22 mail. I don't know.
> 23 Q. Does Ms. Pak confirm receipt of
> 24 documents from you?
> 25 **A.** I believe so, yes.

(Ex.9, p.91, l.l. 2-25)

> 2 Q. Okay. How does she confirm receipt
> 3 of documents?
> 4 **A.** I talk to her.
> 5 Q. I'm sorry?
> 6 **A.** I talk to her over the phone.
> 7 Q. You talk to her over the phone?
> 8 **A.** Yes.
> 9 Q. And does Ms. Pak confirm that she
> 10 received this document?
> 11 **A.** She receive all the documents --
> 12 Q. She confirmed that she received --
> 13 **A.** -- related -- related to this
> 14 payment.
> 15 Q. Okay. When did you have a
> 16 conversation with Ms. Pak that she received all
> 17 the necessary documents?
> 18 **A.** I don't -- I don't recall it.
> 19 Q. But you recall having a conversation
> 20 with her?
> 21 **A.** Yes. Yes.
> 22 Q. And she confirmed that ACR
> 23 submitted --
> 24 **A.** Yes.
> 25 Q. -- all the necessary documents?
> 2 **A.** Yes.

(Ex.9, p.92, l.l. 2-25; p.93, l.2).

5

      See Exhibit 10, Woori Letter, pages 91-93, where the deposition of Oren Levy discloses:

> 20 Q. Did he [Ed Levy] seem worried about my documents that
> 21 were stored in the computer?
> 22 **A.** No, because my father maintained meticulous
> 23 records in hard copy form, you know, since the
> 24 beginning of his time doing this business, since before
> 25 computers existed.

(Ex.10, p.56, l.l. 20-25)

> Q. But it was your testimony that he never used
> 3 -- I'm sorry. Scratch that.
> 4 Do you know whether your father used any USB
> 5 or CD or hard drive to back up his electronic
> 6 documents?
> 7 **A.** My father doesn't know how to use a USB
> 8 today, so. . .
> 9 Q. Okay. So he never backed up the documents
> 10 that were stored in his computer. Correct?
> 11 **A.** I don't believe so, but he had only been
> 12 using that computer for a couple of years probably. I
> 13 mean, he was doing everything with typewriter, hard
> 14 copies, fax. You know, just to give some context for
> 15 the deposition, the way that the business has always
> 16 been run aftermarket support, it's fax communications
> 17 which end up in hard copy and a lot of hard copy files
> 18 that have to be sent to clients and they have to be,
> 19 you know, declared as received, so there wasn't a great
> 20 need for technology and technology hasn't really caught
> 21 up with a lot with this business, except for IT
> 22 security in terms of technical data, management and
> 23 recordkeeping.

(Ex.10, p.57, l.l. 2-23)

> Q. Okay. So by September 2013, did you or your
> 23 father take any additional steps to preserve documents
> 24 related to this litigation?
> 25 **A.** I don't know.
> 2 Q. Who would know?
> 3 **A.** As I mentioned before, my father did
> 4 everything with hard copies. So when this litigation
> 5 commenced, he supplied everything minus technical data
> 6 and confidential information regarding supply chain
> 7 issues to counsel

(Ex.10, p.p.63-64, l.l. 23-7)

6

        9 **A.** My father mainly handled the Korean business
        10 by himself.
(Ex.10, p.65, l.l. 9-10)

    No meta data is created by the means of transmission used by Ed. Therefore, neither Ed nor ACR could have knowingly, maliciously, wantonly, much less, actually, destroyed the metadata advanced by defendant's attorneys as 'crucial', which metadata, as seen above, even if it did exist and, it most certainly did not, is moot.

    For these reasons ACR respectfully urges that Woori's request to file a motion for spoliation be denied.

    Respectively submitted,

The Law Office of John E. Cone Jr.    Marc M. Coupey Law, PLLC

/S/ John E. Cone    /S/ Marc M. Coupey
John E. Cone Jr., Esq. (JC 7827)    Marc M. Coupey, Esq. (MC 6152)
2 Ascot Circle    441 Saw Mill River Road
Mount Kisco, NY 10549    Millwood, NY 10546
Tel.: (914) 481 6249    Tel.: (914) 426-0661
jcone@jconelaw.com    mmcoupeylaw@verizon.net

c.c.
Robert S. Friedman, Esq., (rfriedman@sheppardmullin.com)